```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  2/19/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

JOHN M. ADORNO et al.,                    :

                        Plaintiffs,        :

            - against -                    :

PORT AUTHORITY OF NEW YORK                 :
AND NEW JERSEY,
                                           :
                        Defendant.
                                           :
- - - - - - - - - - - - - - - - - - -x

**OPINION**

06 Civ. 593 (DC)

**APPEARANCES**    PEDOWITZ & MEISTER, LLP
                   Attorneys for Plaintiffs
                        By:  Arnold H. Pedowitz, Esq.
                             David Harrison, Esq.
                   1501 Broadway, Suite 800
                   New York, New York  10036

                   MILTON H. PACHTER, Esq.
                   Attorney for Defendant
                        By:  Megan Lee, Esq.
                             Karla D. Denalli, Esq.
                             Edward Schroll, Esq.
                   225 Park Avenue South, 13th Floor
                   New York, New York  10003

**CHIN, District Judge**

            In this employment case, seven Hispanic police officers
sued the Port Authority of New York and New Jersey (the "Port
Authority"), alleging discrimination and retaliation.  The case
was tried to a jury in September 2009.  On September 24, 2009,
the jury returned a split verdict.  The jury found in favor of
plaintiffs Erick Torres and Silfredo Rivera on their claims that
their promotion to sergeant was delayed because of their race.
The jury awarded Torres backpay of $42,414 and Rivera backpay of
$58,764.72 for a total award of $101,178.72.  The jury ruled in
favor of the Port Authority on plaintiffs' remaining claims:

Torres's claims that he was denied a promotion to detective and an appointment to the Silver Shield program as well as his claim for pain and suffering; Rivera's claim for pain and suffering; and the remaining five plaintiffs' promotion, appointment, and retaliation claims.  Accordingly, five of the seven plaintiffs recovered nothing.  I had also previously dismissed certain other of plaintiffs' claims.

Plaintiffs now seek attorneys' fees and costs pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1988.  Plaintiffs request fees of $765,084 and costs of $62,079.  Rivera and Torres also seek prejudgment interest on their backpay awards.

**DISCUSSION**

The facts and background of the case are set forth in the Court's decision granting in part and denying in part the Port Authority's motion for summary judgment and denying plaintiffs' motion for sanctions for spoliation of evidence.  See Adorno v. Port Auth. of N.Y. & N.J., 258 F.R.D. 217 (S.D.N.Y. 2009).

Attorneys' fees, costs, and prejudgment interest are awarded, but only to the extent set forth below.

**A.    Attorneys' Fees**

**1.    Applicable Law**

In civil rights cases, the court has discretion to award reasonable attorneys' fees and costs to the "prevailing

-2-

party."  42 U.S.C. § 1988(b); see also 42 U.S.C. § 2000e-5(k).
In determining the amount of attorneys' fees to award, courts
traditionally employed the two-step "lodestar" method:  first,
the court calculated the "lodestar" amount by multiplying the
reasonable number of hours worked by a reasonable hourly rate;
and, second, the court then adjusted the lodestar for case-
specific considerations.  See Barfield v. N.Y. City Health &
Hosps. Corp., 537 F.3d 132, 151 (2d Cir. 2008).

        Recently, however, the Second Circuit suggested that
the term "lodestar" be abandoned.  Arbor Hill Concerned Citizens
Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 & n.4
(2d Cir. 2008).  The court held that, in determining the amount
of a reasonable fee award, the district court must engage in a
slightly different process:  the court sets a "reasonable hourly
rate," bearing in mind all the case-specific variables, and the
court then uses that reasonable hourly rate to calculate the
"presumptively reasonable fee" by multiplying the rate by the
number of hours reasonably expended.  Arbor Hill, 522 F.3d at
190; see Porzig v. Dresdner, Kleinwort, Benson, North America
LLC, 497 F.3d 133, 141 (2d Cir. 2007) ("The presumptively
reasonable fee analysis involves determining the reasonable
hourly rate for each attorney and the reasonable number of hours
expended, and multiplying the two figures together to obtain the
presumptively reasonable fee award.").

        Although the court in Arbor Hill did not explicitly
explain what should happen once the "presumptively reasonable

fee" was set, courts have been adjusting the "presumptively reasonable fee" for traditional factors such as the degree of the plaintiff's success. See, e.g., Barfield, 537 F.3d at 151-52 (affirming 50% deduction for lack of success); Robinson v. City of N.Y., No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009) ("Following the determination of the presumptively reasonable fee, the court must then consider whether an upward or downward adjustment of the fee is warranted based on factors such as plaintiffs' success in the litigation."); McDow v. Rosado, 657 F. Supp. 2d 463, 467 (S.D.N.Y. 2009) ("unstated, but again presumed, is that the presumptively reasonable fee is just that -- a presumptive figure that can be further adjusted as circumstances warrant"). Hence, the process is really a four-step one, as the court must: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award.

A reasonable hourly rate is "the rate a paying client would be willing to pay." Arbor Hill, 522 F.3d at 190. In setting the reasonable hourly rate, the court is to consider the traditional factors first enumerated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92-93, 96 (1989):

> (1) the time and labor required; (2) the
> novelty and difficulty of the questions; (3)

-4-

> the level of skill required to perform the
> legal service properly; (4) the preclusion of
> employment by the attorney due to acceptance
> of the case; (5) the attorney's customary
> hourly rate; (6) whether the fee is fixed or
> contingent; (7) the time limitations imposed
> by the client or the circumstances; (8) the
> amount involved in the case and the results
> obtained; (9) the experience, reputation, and
> ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature
> and length of the professional relationship
> with the client; and (12) awards in similar
> cases.

Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson, 488 F.2d at 717-

19). The court must also bear in mind that "a reasonable, paying

client wishes to spend the minimum necessary to litigate the case

effectively." Arbor Hill, 522 F.3d at 186. The court should

also consider that the client "might be able to negotiate with

his or her attorneys, using their desire to obtain the

reputational benefits that might accrue from being associated

with the case." Id.

A court may determine the reasonable hourly rate by

relying both on "its own knowledge of comparable rates charged by

lawyers in the district," Morris v. Eversley, 343 F. Supp. 2d

234, 245 (S.D.N.Y. 2004), as well as on "evidence proffered by

the parties." Farbotko v. Clinton County of N.Y., 433 F.3d 204,

209 (2d Cir. 2005). "[C]urrent rates, rather than historical

rates, should be applied in order to compensate for the delay in

payment." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d

Cir. 1998).

As Judge Francis recently noted, although the Second

Circuit in Arbor Hill held that the Johnson factors are to be

-5-

considered in setting the reasonable hourly rate, some of the
factors "are more logically related to determining the number of
hours that should be compensated, and others, such as the extent
of success, might be considered in setting the number of
compensable hours or in making a further adjustment after a
presumptive fee has been established." Rozell v. Ross-Holst, 576
F. Supp. 2d 527, 537 n.1 (S.D.N.Y. 2008); accord Robinson v. City
of N.Y., 2009 WL 3109846, at *4 n.6.  It is clear, in any event,
that adjustments must be made to the number of hours based on
case-specific factors, including, for example, deductions for
"excessive, redundant or otherwise unnecessary hours."
Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999);
see also Nature's Enters., Inc. v. Pearson, No. 08 Civ. 8549
(JGK), 2010 WL 447377, at *10 (S.D.N.Y. Feb. 9, 2010).  The key
is that the Johnson factors are weighed at some point in the
process.  Rozell, 576 F. Supp. 2d at 537 n.1.

        The Supreme Court has held that "'the most critical
factor' in determining the reasonableness of a fee award 'is the
degree of success obtained.'"  Farrar v. Hobby, 506 U.S. 103, 114
(1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983));
accord Barfield, 537 F.3d at 152.  Where a plaintiff achieves
only limited or partial success, an adjustment may be made, even
where the plaintiff's unsuccessful claims were nonfrivolous and
asserted in good faith.  Hensley, 461 U.S. at 436.  As the Second
Circuit recently instructed:

> A district court's assessment of the "degree
> of success" achieved in a case is not limited
> to inquiring whether a plaintiff prevailed on

> individual claims. . . .  Both "the quantity
> and quality of relief obtained," as compared
> to what the plaintiff sought to achieve as
> evidenced in her complaint, are key factors
> in determining the degree of success
> achieved. . . .  Indeed, this comparison
> "promotes the court's 'central'
> responsibility to 'make the assessment of
> what is a reasonable fee under the
> circumstances of the case.'"

Barfield, 537 F.3d at 152 (citations omitted).

The courts have rejected a per se proportionality rule, i.e., proportionally linking the prevailing party's attorneys' fees to the degree of monetary success achieved.  City of Riverside v. Rivera, 477 U.S. 561, 578 (1986); Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 519 (S.D.N.Y. 2002). Indeed, the Supreme Court has observed that a rule of proportionality would make it difficult for civil rights plaintiffs to obtain quality legal representation, and by enacting fee-shifting statutes in civil rights cases, "Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights." City of Riverside, 477 U.S. at 578.

The court may exclude hours spent on "severable unsuccessful claims."  Green v. Torres, 361 F.3d 96, 98 (2d Cir. 2004) (per curiam).  Where "the successful and unsuccessful claims were interrelated and required essentially the same proof," a reduction in the number of hours is not appropriate. Murphy v. Lynn, 118 F.3d 938, 952 (2d Cir. 1997); accord LeBlanc-Sternberg, 143 F.3d at 762 ("When a plaintiff has . . . prevailed on fewer than all of his claims, the most important question in

determining a reasonable fee is whether the failed claim was intertwined with the claims on which he succeeded.").

### 2.  **Application**

As a threshold matter, Rivera and Torres are "prevailing parties."  The jury found in their favor on their delayed promotion to sergeant claims and awarded them a total of $101,178.72 in backpay.  Hence, they are entitled to a fee award. Plaintiffs seem to acknowledge that, of the seven plaintiffs, only Rivera and Torres are entitled to an award of fees (Pl. Mem. at 3), but, as discussed further below, they argue that no adjustment should be made for the remaining five plaintiffs' lack of success.  (Id. at 6, 7-8, 20-22; Pl. Reply Mem. at 6-9).

Plaintiffs request fees of $746,934 in their initial application and additional fees of $18,150 for subsequent work on their fee application, for a total in fees of $765,084. (Pedowitz Decl. at 11; Pedowitz Reply Decl. ¶¶ 25-26 & Ex. I).

Taking into account the Johnson and other relevant factors, I determine the reasonable hourly rates; I determine the reasonable number of hours expended; I multiply the two to arrive at the "presumptively reasonable fee"; and I make appropriate adjustments to arrive at the final fee award.

### a.  **Hourly Rates**

Plaintiffs seek the following rates:

| Attorneys | Law School Class | |
|---|---|---|
| Arnold Pedowitz | 1971 | $550 |
| Robert Meister | 1962 | $600 |

-8-

| | | |
|---|---|---|
| David Harrison | 2004 | $300 |
| Karen Kranson | 2008 | $250 |
| Yogita Peters[1] | | $200 |
| Hanna Greer | 2004 | $225 |

**Law Graduate**

| | | |
|---|---|---|
| Amanda Babb | 2009 | $150 |

**Paralegal**

| | | |
|---|---|---|
| Yonatan Nadelman | | $100 |

(Pl. Mem. at 3).

Pedowitz has practiced law for some thirty-six years, primarily in the area of labor and employment law.  He regularly charges his clients fees based on a rate of $550 per hour.  He has submitted declarations from six experienced and respected practitioners in employment law who attest that an hourly rate of $550 for Pedowitz is within the range of rates charged by lawyers of comparable experience and stature in the field.  (Pedowitz Decl., Ex. H).  A rate of $550 is also consistent with rates awarded in this district for experienced civil rights lawyers.[2]

_____

[1]     Peters is listed in plaintiffs' memorandum of law (Pl. Mem. at 3), but no information is provided for her in the Pedowitz Declaration (see Pedowitz Decl. ¶¶ 11-17).  Instead, information is provided for Randi Melnick (id. ¶ 15), but plaintiffs state elsewhere that they are not seeking fees for any of Melnick's time (Pl. Mem. at 14).

[2]     "Consistent 'precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time.'"  Mugavero v. Arms Acres, Inc., No. 03 Civ. 5724 (PGG), 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010) (quoting Vilkhu v. City of N.Y., No. 06 Civ. 2095 (CPS), 2009 WL 1851019, at *4 (E.D.N.Y. June 26, 2009)); Rozell v. Ross-Holst, 576 F. Supp. 2d at 545-46 (applying hourly rates of $600 for partners, $350 for senior associates, $250 for junior associates,

The case was a complex and difficult one, involving alleged discrimination and retaliation in the Port Authority Police Department, and a high level of skill was required. Indeed, the Port Authority was represented by extremely capable counsel highly experienced in employment matters. The case was an "undesirable" one in the sense that it was difficult and time-consuming, the Port Authority has a reputation for settling only reluctantly, and plaintiffs' claims arose during a troubling time for the Port Authority: the aftermath of September 11, 2001. In addition, counsel undoubtedly had to turn away other business because of the time constraints of this case. Plaintiffs' counsel also relied on the fee-shifting provisions of Title VII and § 1988. I conclude that a paying client would have been willing to pay Pedowitz the rate of $550 per hour for this case.

For many of the same reasons, and in light of their experience, I agree that the rates requested for Greer, Babb, and Nadelman are reasonable. Adjustments must be made, however, in the rates requested for the others.

Harrison has been out of law school for less than six years. (Harrison Decl. ¶ 3). Although he has specialized in employment matters, he does not specify in his affidavit how many trials he has conducted. I had the opportunity to observe him at

---

$175 for law clerks, and $125 for paralegals, in case where plaintiff was represented by "one of the outstanding firms representing plaintiffs in employment cases"); Robinson v. City of N.Y., 2009 WL 3109846, at **4-5 (in employment case, applying hourly rates ranging from $185 to $500).

trial in this case, and based on my observations and the factors discussed above, while he is a capable lawyer, I do not believe he falls into the category of "senior associate." His time will be compensated at the hourly rate of $250.

Little information is provided for Meister, and I do not recall him ever appearing before the Court in the case. He has been practicing law for more than forty years, including at substantial law firms, and no doubt he is an excellent lawyer. (Pedowitz Decl. ¶ 13). But no details are provided as to his experience in employment law. His biography on the firm's website lists fifteen other practice areas before it lists "employment litigation." (See http://www.pedowitzmeister.com/ Firm%20Info/Lawyers/484719.aspx (last visited Feb. 13, 2010)). Similarly, a WestLaw search shows that he is listed as plaintiff's counsel in only a few employment matters. I conclude that a paying client would not retain Meister for an employment case of this complexity at the requested hourly rate of $600. I will utilize a rate for his time of $500 an hour.

Kranson graduated from law school only in 2008. (Pedowitz Decl. ¶ 14). Presumably, she was admitted to the bar in early 2009. Hence, she was a first-year lawyer during the bulk of this case. I will utilize a rate for her time of $200.

No information is provided for Peters, and only ten hours of her time are included in any event. (Pl. Mem. at 3). Consequently, her ten hours will be eliminated.

-11-

In sum, I will apply the following hourly rates, which I conclude are reasonable:

**Attorneys**

| | |
|---|---|
| Arnold Pedowitz | $550 |
| Robert Meister | $500 |
| David Harrison | $250 |
| Karen Kranson | $200 |
| Hanna Greer | $225 |

**Law Graduate**

| | |
|---|---|
| Amanda Babb | $150 |

**Paralegal**

| | |
|---|---|
| Yonatan Nadelman | $100 |

b.  **Hours Expended**

Plaintiffs are seeking fees for some 2,385 hours of time expended. (Pl. Mem. at 3). Plaintiffs' counsel has exercised "billing judgment" to eliminate "excessive or duplicative" or other hours, including almost 200 hours for Melnick, Greer, and Peters, and an unspecified number of Pedowitz's hours consulting with, or reviewing the work of, Harrison. (Pl. Mem. at 14). I consider here whether any additional hours should be eliminated as excessive, duplicative, unnecessary, or improperly documented.

As an initial matter, this was a hard-fought, heavily-litigated case, with seven plaintiffs. It continued for more than four years. It included extensive discovery, including document discovery of some 11,000 pages and twenty-four fact depositions; expert reports and depositions of experts; numerous

-12-

discovery disputes and discovery conferences; discovery motions;
a motion for sanctions by plaintiffs; defendant's motion for
summary judgment; ten motions in limine; and a jury trial that
extended over ten days.  The Port Authority defended the case
tenaciously.  There is no doubt that many hours of work were
required.

On the other hand, I conclude that many of the hours
were excessive and unnecessary.  It is true that there were many
discovery disputes, but I ruled in favor of the Port Authority on
most of them.  (See Def. Mem. at 10).  At times plaintiffs'
requests simply were not reasonable, and the Port Authority's
objections were well-founded.  At times plaintiffs simply asked
for too much.  Their spoliation motion was ill-advised, and I
denied it.  See Adorno, 258 F.R.D. at 228-29.  Indeed, a review
of the time records shows that Harrison spent some 104.45 hours
and Pedowitz some 24.55 hours on the spoliation motion from April
4, 2008, through December 2, 2008 (Pedowitz Decl., Ex. A), and at
the rates requested of $300 for Harrison and $550 for Pedowitz,
plaintiffs are seeking some $44,837 for an unsuccessful discovery
sanctions motion.  On the other hand, the Port Authority's
summary judgment was successful in part, as I dismissed several
of plaintiffs' claims.  Adorno, 258 F.R.D. at 229-36.
Plaintiffs' contention that their fees of substantially more than
$700,000 "evidence an extremely efficient and very reasonable
usage of time" (Pl. Mem. at 17) is simply not so.  I may account
for excessive, redundant, and unnecessary hours "by making an

-13-

across-the-board reduction in the amount of hours," <u>Luciano v. Olsten Corp.</u>, 109 F.3d 111, 117 (2d Cir. 1997) (affirming across-the-board percentage reductions), and I will make such a percentage reduction here.

Defendants object to plaintiffs' use of "block billing," the practice of "aggregating multiple tasks into one billing entry." <u>Molefi v. Oppenheimer Trust</u>, No. 03 Civ. 5631 (FB), 2007 WL 538547, at *7 (E.D.N.Y. Feb. 15, 2007). "While 'block-billing' is disfavored and may lack the specificity required for an award of attorneys' fees, it is not prohibited as long as the Court can determine the reasonableness of the work performed." <u>Mugavero</u>, 2010 WL 451045, at *8. Here, I have reviewed the time records, and they provide sufficient detail as a general matter.

Including the additional hours set forth in their reply papers, plaintiffs seek compensation for the following hours:

| | |
|---|---|
| Pedowitz | 481.5 |
| Meister | 24.3 |
| Harrison | 1,530.4 |
| Kranson | 22.4 |
| Greer | 222.1 |
| Babb | 4.0 |
| Nadelman | 83.5 |

(Pl. Mem. at 3; Pedowitz Reply Decl., Ex. I).

I reduce these hours by 10% to account for excess, duplicativeness, and waste, to the following:

| | |
|---|---|
| Pedowitz | 433.5 |
| Meister | 21.9 |
| Harrison | 1,377.4 |
| Kranson | 20.2 |
| Greer | 200.0 |
| Babb | 3.6 |
| Nadelman | 75.2 |

-14-

c.   **Presumptively Reasonable Fee**

I multiply the hourly rates determined above by the number of hours reasonably expended as follows:

| | | | |
|---|---|---|---|
| Pedowitz | 433.5 | $550 | $238,425 |
| Meister | 21.9 | $500 | $ 10,950 |
| Harrison | 1,377.4 | $250 | $344,350 |
| Kranson | 20.2 | $200 | $ 4,040 |
| Greer | 200.0 | $225 | $ 45,000 |
| Babb | 3.6 | $150 | $ 540 |
| Nadelman | 75.2 | $100 | $ 7,520 |
| | | Total: | $650,825 |

The presumptively reasonable fee is $650,825.

d.   **Adjustments**

The most significant dispute between the parties is whether a deduction should be made for plaintiffs' lack of success.  Plaintiffs contend that no deduction should be made because the successful and unsuccessful claims were intertwined, and that virtually all of the proof and discovery would have been required even if, in essence, this had been merely a two-plaintiff case.  Plaintiffs contend that all five of the unsuccessful plaintiffs would have been deposed as witnesses in support of Torres's and Rivera's claims.  (Pl. Mem. at 21 & n.6; Reply Mem. at 6-9).  Plaintiffs also contend that the lawsuit was successful because five of them -- Torres, Rivera, Adorno, Mendez, and Martinez -- were promoted to sergeant as a result of the lawsuit.  (Pl. Mem. at 21; Pl. Reply Mem. at 8).

I conclude that a substantial reduction must be made for lack of success.  First, the jury found against five of the seven plaintiffs, and I had previously dismissed certain of

-15-

plaintiffs' claims. Five of the seven plaintiffs simply were not prevailing parties and are not entitled to any fees or costs.

Second, plaintiffs sought significant backpay awards. Each offered different damages theories, depending on whether the position was sergeant, detective, or Silver Shield, and depending on when the promotion or appointment should have been made. Taking the highest amount each plaintiff asked of the jury, plaintiffs sought the following in backpay:

| | |
|---|---|
| Adorno | $111,693 |
| Castro | $198,792 |
| Martinez | $136,199 |
| Mendez | $113,370 |
| Rivera | $ 95,491 |
| Torres | $127,242 |
| Welch | $116,094 |
| Total: | $898,881 |

(PX 293). Only Rivera and Torres were awarded any backpay, and they were awarded substantially less than they sought, as Rivera was awarded $58,764 and Torres $42,414. See Kassim v. City of Schenectady, 415 F.3d 246, 254 (2d Cir. 2005) ("Where recovery of private damages is the purpose of civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.").

Third, all seven plaintiffs sought damages for pain and suffering. No plaintiff recovered any such damages.

Fourth, throughout the case plaintiffs asserted a number of different claims: failure to promote to sergeant; failure to promote to detective; failure to appoint to Silver

-16-

Shield; retaliation; disparate impact discrimination; hostile environment racial harassment; discriminatory excessive discipline; and pattern and practice discrimination.  Many of these claims were dismissed on the summary judgment motion or by the Court at trial, and others were rejected by the jury.  In the end, the only successful claims were the claims of Rivera and Torres that their promotion to sergeant was delayed because of their race, and even their success was limited.  Torres had also asserted detective, Silver Shield, and retaliation claims, and he had sought a greater backpay award and pain and suffering damages.  (Tr. 1688-89; PX 293).  Rivera had sought a greater backpay award and pain and suffering damages.  (Tr. 1689; PX 293).  Both had claims dismissed as well on defendants' summary judgment motion and/or at trial.  See Adorno, 258 F.R.D. at 229-36.  (See Tr. 3-4, 1269, 1275-82, 1471).

Fifth, plaintiffs' "intertwining" argument may carry some force as to the intertwining of Rivera's and Torres's successful and unsuccessful claims, but it fails as to the claims of the five unsuccessful plaintiffs.  Plaintiffs have not cited any authority for the proposition that in a multi-plaintiff case, where some plaintiffs succeed and some fail, counsel may be compensated for the time spent prosecuting the unsuccessful plaintiffs' claims.[3]  Moreover, even assuming this were

---

[3]     The cases cited by plaintiffs in this respect all involved a single plaintiff asserting multiple claims.  (Pl. Reply Mem. at 7-8 (citing Kassim v. City of Schenectady, 415 F.3d 246 (2d Cir. 2005); Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999); Dominic v. Consol. Edison & Co., 822 F.2d

permissible as a theoretical matter, with some minor overlap, the claims of Rivera and Torres were severable from the claims of the unsuccessful plaintiffs.  The seven plaintiffs were stationed in different locations, had different immediate supervisors, and passed (or failed to pass) the sergeant's test at different times.  Some had disciplinary problems or presented other issues. While it is true that some of the testimony would have been required any way (such as the processes by which sergeants and detectives were selected), there is no doubt that this case would have been litigated very differently -- and would have taken significantly less time -- if there had been only two plaintiffs rather than seven.  Moreover, the different claims themselves were also severable to a great extent -- for example, detectives were chosen in different manner from sergeants (a test was required for the latter but not the former), and yet a different method was used for selecting Silver Shields, and the retaliation claims required different proof as well.  In the end, no one prevailed on a detective, Silver Shield, or retaliation claim.

Finally, plaintiffs argue that they achieved a "terrific success" because five of them were promoted to sergeant and "[a] public finding of discrimination [was] entered against the Port Authority." (Pl. Reply Mem. at 8).  I disagree.  The Port Authority vigorously disputes that it promoted plaintiffs

---

1249, 1259-60 (2d Cir. 1987)); and Pl. Mem. at 8 (citing Imbeault v. Rick's Cabaret Int'l Inc., No. 08 Civ. 5456 (GEL), 2009 WL 2482134 (S.D.N.Y. Aug. 13, 2009); Green v. Torres, 361 F.3d 96, 98-99 (2d Cir. 2004); Hensley v. Eckhart, 461 U.S. 424, 435 (1983)).

because of this lawsuit and contends that the five plaintiffs were promoted "within the normal process and that the decision to promote some of them had already been made prior to the lawsuit." (Def. Mem. at 13-14).  The timing of the promotions (Rivera: 5/6/05; Adorno: 9/1/06; Mendez: 9/1/06; Torres: 1/22/08; Martinez: 1/22/08) does not support plaintiffs' assertions. Moreover, even assuming these promotion decisions were influenced by the lawsuit or the threat thereof, the decisions were made long before trial and would not be a basis for awarding fees for the many hours of litigation that ensued.  Finally, although there was a public finding that the Port Authority discriminated against two officers, there were also public findings that the Port Authority did not discriminate against five officers, it did not retaliate in this case, it did not allow a hostile environment to exist, it did not utilize procedures that had a disparate impact on Hispanic police officers, and it did not engage in a pattern and practice of discrimination.[4]

In his reply declaration, plaintiffs' lead counsel addresses at length the challenges facing private lawyers who practice in the civil rights area; he argues that these are lawyers "who feel a social commitment and are willing to risk the

---

[4]     Moreover, as discussed during trial (Tr. 683-84), there is some authority for the proposition that corrective action by an employer should not be admitted as proof that discrimination occurred, on the grounds that, as a policy matter, employers would be deterred from investigating allegations of and taking steps to correct discrimination.  See, e.g., Dennis v. County of Fairfax, 55 F.3d 151, 154 (4th Cir. 1995) ("if corrective action operated in a court of law as a confession of liability, untoward consequences would result").

possibility of being denied payment in exchange for correcting
what they perceive to be a societal injustice." (Pedowitz Reply
Decl. ¶ 5; see id. ¶ 9) ("Attorney fee awards are the lifeblood
of lawyers who try these cases with the hope of living off of
their earnings. . . . Few lawyers who try civil rights cases
become wealthy because of their civil rights trial work."). I am
familiar with these challenges, and I appreciate the concerns
counsel raises. But the fee-shifting statutes provide for
attorneys' fees when civil rights are vindicated, not when
plaintiffs bring claims that lack merit. Here, while two of the
seven plaintiffs each prevailed on one of several claims,
plaintiffs' sweeping attempt to prove that the Port Authority
engaged in a broad pattern and practice of discrimination and
retaliation against its Hispanic police officers failed. The
award of fees must be adjusted accordingly.

I will reduce the presumptively reasonable fee by 60%
to account for plaintiffs' lack of success. While the Port
Authority argues that plaintiffs should recover (at most) only
two-sevenths of the presumptively reasonable fee, I find that
some of the additional time would have been required even if this
had only been a two-plaintiff case. I also conclude that some of
the proof offered for Torres's and Rivera's unsuccessful claims
was relevant to their successful claims.

I award plaintiffs Torres and Rivera attorneys' fees of
$260,330 (40% of the presumptively reasonable fee of $650,825).

-20-

**B.**   **Costs**

Plaintiffs seek costs of $58,013 on their initial application (Pl. Mem. at 22; Pedowitz Decl., Ex. B) and costs of $66 in connection with their reply papers (Pedowitz Reply Decl., Ex. I) for a total of $58,079.  The Port Authority objects, on the grounds the costs are unreasonable and lack support, noting that no receipts are provided.  (Def. Mem. at 14-17).

In general, I accept plaintiffs' documentation and representations that the costs were reasonably incurred.  I have two concerns.  First, some $26,127 was spent on plaintiffs' expert witness (Pedowitz Decl., Ex. B); in other words, more than 40% of the costs are attributable to the fees and expenses of one expert witness.  This was not money well spent.  Second, the costs sought by plaintiffs are for the entire case, without any deduction for the lack of success of five of the seven plaintiffs.  The five unsuccessful plaintiffs are not prevailing parties and are not entitled to recover costs.

I will award 50% of the requested costs, or $31,040.

**C.**   **Prejudgment Interest**

Finally, plaintiffs seek prejudgment interest on the backpay awards to Rivera and Torres.[5]  The Port Authority agrees that Rivera and Torres are entitled to prejudgment interest, and they agree that interest should begin to accrue for Rivera on

---

[5]     As the parties agreed, the jury was instructed not to include any prejudgment interest in its damages calculations. (Tr. 1261, 1664).

January 24, 2003.  (Def. Mem. at 17; Pl. Mem. at 23; see PX 293, at 2).  The parties are unable to agree, however, on when interest should begin to accrue for Torres, and they are unable or unwilling to reach a compromise.  (Pl. Mem. at 23; Def. Mem. at 17).

The jury awarded Rivera backpay of $58,764.  That amount matches the amount requested if the jury found that Rivera should have been promoted on January 24, 2003.  (PX 293, at 2). Hence, Rivera should received interest from January 24, 2003.  On the other hand, Torres was awarded $42,414, an amount that does not match either of the two sergeant's amounts set forth in his damages calculations.  (Id. at 3).  Obviously, the jury found that Torres should have been promoted -- but at some point substantially after January 24, 2003.[6]

Torres argues that interest should accrue from October 23, 2005, the date the last promotions were made prior to filing suit.  (Pl. Reply Mem. at 10).  The Port Authority argues that interest should accrue from September 1, 2006, when Mendez and Adorno were promoted.  (Def. Mem. at 17).  I will give Torres the benefit of the doubt and direct that interest be calculated on his backpay award from October 23, 2005.

The parties appear to agree that prejudgment interest is to be calculated based on T-bill rates and they are directed

---

[6]     Presumably, if the jury had accepted the date of January 24, 2003, it would have awarded $98,696 in backpay.  (PX 293, at 3).  It awarded less than half of that.

to make the backpay calculations, using accrual dates of January 24, 2003, for Rivera and October 23, 2005, for Torres.

## CONCLUSION

Plaintiffs Torres and Rivera are hereby awarded attorneys' fees in the amount of $260,330 and costs in the amount of $31,040. Torres is entitled to prejudgment interest beginning October 23, 2005, and Rivera is entitled to prejudgment interest beginning January 24, 2003. Judgment will be entered in favor of Torres and Rivera on their claim that they were discriminated against by the Port Authority on the basis of in the promotion to sergeant, and in favor of the Port Authority dismissing the remainder of plaintiffs' claims. The parties are directed to agree on a proposed judgment, including prejudgment interest, and to submit a proposed judgment by March 1, 2010. If they are unable to agree, each side shall submit a proposed judgment by March 1, 2010, with letters addressing the disputed areas.

SO ORDERED.

Dated:     New York, New York
           February 19, 2010

DENNY CHIN
United States District Judge

-23-